FILED & ENTERED

JUN 29 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY cargill      DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>NANCY ANN HOWELL<br><br><div align="right">Debtor</div> | Case No.: 6:13-bk-29922-MH<br><br>Chapter: 7<br><br>Adv. No.: 6:14-ap-01070-MH |
| LAW OFFICE OF ANDREW S. BISOM &<br>EISENBERG LAW FIRM, APC<br><div align="right">Plaintiffs</div><br>v.<br><br>NANCY ANN HOWELL<br><br><div align="right">Defendant</div> | **MEMORANDUM DECISION AND<br>ORDER GRANTING PLAINTIFFS'<br>MOTION FOR SUMMARY JUDGMENT** |

I.      Background & Undisputed Facts

In September 2006, Nancy Howell ("Defendant") retained both the Law Office of Andrew S. Bisom and Day/Eisenberg[1] (collectively "Plaintiffs"; individually "Bisom" and "Eisenberg") to represent her in an action she had commenced against the Oso Valley Greenbelt Association ("HOA") and two of its officers and/or directors. In the course of engaging Plaintiffs, and as a basis for her lawsuit, Defendant informed Plaintiffs that, while attending a meeting of the HOA, she had been the victim of a citizen's arrest.

During the prosecution of Defendant's claims, however, Plaintiffs discovered that Defendant had previously been involved in litigation with the HOA and one or more of its board members, which resulted in a significant monetary judgment against Defendant. Plaintiffs also discovered that, during the time they were representing Defendant, she settled her claims against the HOA in exchange for a cash payment and the satisfaction of the monetary judgment previously entered against her. Defendant subsequently failed to pay Plaintiffs for the services they rendered or for the costs they incurred while representing Defendant.

Subsequently, Plaintiffs initiated a state court action against Defendant for breach of contract, breach of implied covenant of good faith and fair dealing, quantum meruit, and fraud. A judgment (the "Judgment") was ultimately entered by the California state court on November 3, 2008, in Plaintiffs' favor in the amount of $48,080.94. The Judgment expressly incorporated the jury's written special verdict, and included the following findings:

---

[1] Day/Eisenberg was subsequently dissolved. The subject state court judgment was subsequently assigned from Day/Eisenberg to Eisenberg Law Firm, APC in or about April 2011. The Court uses "Eisenberg" to refer to either Day/Eisenberg or Eisenberg Law Firm APC, as applicable.

Question No. 6: Did defendant, Nancy Howell, intentionally fail to disclose important fact(s) that plaintiffs, Law Office of Andrew S. Bisom and Day/Eisenberg, did not know and could not reasonably have discovered?
Answer: Yes.

Question No. 7: Did defendant, Nancy Howell, intend to deceive plaintiffs, Law Office of Andrew S. Bisom and Day/Eisenberg, by concealing the fact(s)?
Answer: Yes.

Question No. 8:  Did plaintiffs, Law Offices of Andrew S. Bisom and Day/Eisenerg, rely on defendant, Nancy Howell's deception and was such reliance reasonable under the circumstances?
Answer: Yes.

Question No. 9: Was defendant, Nancy Howell's, concealment a substantial factor in causing harm to plaintiffs, LAW OFFICES OF ANDREW S. BISOM and DAY I EISENBERG?
Answer: Yes.

Question No. 10: What are plaintiffs, Law Offices of Andrew S. Bisom and Day/Eisenberg's, damages resulting from the fraud Mrs. Howell committed upon them?
Answer:
Law Office of Andrew S. Bisom:

$24.040.47

Day/Eisenberg:

$24,040.47

TOTAL            $48,080.94

[Dkt. No. 66, Ex. B] (stylistic and grammatical changes made).

In April 2011, the right to collect on the Judgment was assigned from Day/Eisenberg to the Eisenberg Law Firm, APC.

II.      Procedural History[2]

On October 28, 2008, prior to commencing the instant bankruptcy case, Defendant filed a chapter 7 case [Case No. 8:08-bk-16911-TA] (the "Prior Case"). Of significance, the Judgment was entered by the state court on November 3, 2008, six days after the Defendant filed the Prior Case. The Prior Case was subsequently dismissed on January 30, 2009, due to Debtor's failure to attend the 11 U.S.C. § 341(a) meeting of creditors.

On December 12, 2013, Defendant filed another Chapter 7 voluntary petition, commencing this above-captioned bankruptcy case. On March 14, 2014, the Plaintiffs filed a non-dischargeability complaint (the "Complaint") against Defendant pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6), commencing this adversary proceeding (the "Adversary Proceeding").

On October 29, 2014, Plaintiffs filed a motion for summary judgment (the "First MSJ"), seeking judgment on the basis of collateral estoppel. On December 1, 2014, Defendant filed an untimely opposition to the First MSJ. In her opposition, Defendant noted that the Judgment had been entered shortly after the petition date in the Prior Case. As a result, as discussed in detail at the hearing on the First MSJ, the Judgment appeared to have been entered in violation of the automatic stay, and was therefore void. Because the First MSJ was based on application of collateral estoppel to the Judgment, and because such application was no longer available because the Judgment was void, the Court entered an order denying the First MSJ without prejudice on December 18, 2014.

In order to revive the effectiveness of the Judgment notwithstanding that it had been entered in violation of the automatic stay during the Prior Case, on February 23, 2015, Plaintiffs filed in the

---

[2] The Court notes the docket is unusually convoluted, and includes herein only the directly relevant pleadings.

Prior Case:[3] (1) a motion to reopen the Prior Case; and (2) a motion seeking annulment of the automatic stay. Defendant filed an untimely opposition to Plaintiffs' motion to reopen the Prior Case on March 18, 2015. On April 13, 2015, the Court entered orders in the Prior Case: (1) reopening the Prior Case; and (2) annulling the automatic stay to validate the Judgment.

On April 27, 2015, Defendant filed a motion to reconsider the orders reopening the Prior Case and annulling the automatic stay. On May 12, 2015, Plaintiffs filed their opposition. The Court orally denied the motion to reconsider on May 26, 2015. After Plaintiffs lodged a proposed order, Defendant objected to the proposed order, requesting a hearing six weeks later. At a hearing on July 21, 2015, the Court orally overruled Defendant's objections. After Plaintiffs lodged a revised order denying Defendant's motion to reconsider, Defendant once again objected, this time requesting a hearing nine weeks later. On September 29, 2015, the Court orally overruled this second objection. On October 16, 2015, the Court in the Prior Case entered an order denying Defendant's motion to reconsider.

Now armed with an order in the Prior Case annulling the automatic stay and reviving the effectiveness of the Judgment, Plaintiffs filed a second motion for summary judgment in the Adversary Proceeding in this case on October 21, 2015 (the "Second MSJ"); the motion was amended the following day. Defendant then took a multi-pronged litigation approach. Among other actions, on October 27, 2015, Defendant appealed the orders: (1) reopening the Prior Case; (2) annulling the automatic stay; and (3) denying reconsideration, and, on November 12, 2015, Defendant filed her opposition to the Second MSJ. At a hearing on December 2, 2015, the Court continued the hearing on the Second MSJ for a second round of briefing. Specifically, at that hearing the Court noted four legal issues to be addressed in the supplemental briefs: (1) the effect of Defendant's pending appeal on the finality of the Judgment; (2) whether Defendant's time to

---

[3] All hearings in the Prior Case were before the Honorable Theodor C. Albert.

appeal the Judgment had lapsed; (3) whether the jury in state court found that Defendant had a duty to disclose the alleged omissions to Plaintiffs; and (4) whether the state court jury necessarily found Defendant liable on the fraud cause of action. On December 14, 2015, shortly after the initial hearing on the Second MSJ, Defendant appealed the Judgment in state court. On December 15, 2015, Plaintiffs filed their supplemental brief regarding the Second MSJ. On January 19, 2016, Defendant filed her supplemental opposition.

Because of the pending bankruptcy and state court appeals, the Court continued the hearing on the Second MSJ several times. During this time, the parties continued to file unauthorized supplemental pleadings, and corresponding objections to those pleadings.

On September 14, 2016, Plaintiffs requested that the Court further continue the Second MSJ based on the pending appeals. The next day, the Court granted the continuance. As an example of what the Court considers unnecessary and frivolous litigation in the Adversary Proceeding, on September 28, 2016, Defendant filed a motion to reconsider the order continuing the hearing on the Second MSJ. Plaintiff filed its opposition on October 7, 2016. The Court ultimately denied Defendant's motion to reconsider on November 14, 2016. Shortly after the entry of that order, Defendant filed an objection to Plaintiffs' notice of lodgment. On December 22, 2016, the district court affirmed the Court's annulment of the automatic stay in the Prior Case in favor of Plaintiffs. On October 5, 2017, the Ninth Circuit Court of Appeals affirmed the district court ruling.

On November 28, 2016, Defendant filed in the Adversary Proceeding: (1) a motion to reconsider the order denying her motion to reconsider the order entered on September 15, 2016 continuing the hearing on the Second MSJ; and (2) a motion to set a trial date. Both of these motions were denied pursuant to orders entered on January 14, 2017.

The Court continued the hearing on the Second MSJ repeatedly while Defendant prosecuted her

appeal of the annulment of the automatic stay in the Prior Case, as well as her appeal of the

Judgment in state court. On August 5, 2019, the state court entered its appellate ruling affirming

the Judgment in favor of Plaintiffs. Prior to the scheduled hearing on the Second MSJ, which was

set for November 6, 2019, Defendant filed a motion for leave to amend her opposition. On

December 9, 2019, the Court entered an order authorizing both Plaintiffs and Defendant to file

an additional pleading (Defendant had already filed her amended opposition on November 1,

2019). On December 18, 2019, Plaintiffs filed their amended reply.


III.    Legal Discussion


1.    Eisenberg Law Firm, APC's Standing


Defendant asserts that Eisenberg has no standing to prosecute this adversary proceeding because

the Judgment was entered in favor of Day/Eisenberg (along with Bisom). Defendant argues that

because Eisenberg is not the same entity as Day/Eisenberg, Eisenberg lacks standing to be a

plaintiff in this adversary proceeding. Defendant further argues that to the extent the Judgment

was assigned, the assignment was invalid because it occurred after Day/Eisenberg was dissolved.

The Court disagrees.


The mere fact that a partnership is dissolved does not prevent that partnership from disposing of

partnership assets. CAL. CORP. CODE §§ 16801-16807 governs the winding up of partnership

business. CAL. CORP. CODE § 16804(1) provides that a partnership is bound of a partner's act

after dissolution when the act is "[a]ppropriate for winding up the partnership business."

Therefore, the mere fact that the Day/Eisenberg partnership was dissolved does not prevent that

partnership from disposing of the Judgement, which was a partnership asset.

Based on the foregoing, the Court finds that the assignment of the Judgment from Day/Eisenberg to Eisenberg in April 2011 was valid. Pursuant to binding Ninth Circuit precedent, an assignee can step into the shoes of an assignor and assert a nondischargeability claim. *See In re Bojayian*, 564 F.3d 1088, 1091 (9th Cir. 2009) ("That is, assuming New Falls was indeed the recipient of a general assignment of the original judgment, it can stand in the shoes of its assignor and pursue a non-dischargeability action under § 523(a)(2)(B).").

2.  Summary Judgment

Plaintiffs here seek summary judgment on their 11 U.S.C. § 523(a)(2)(A) claim based on application of collateral estoppel/issue preclusion to the Judgment.  When seeking summary judgment, the moving party has the burden of establishing (1) the absence of a genuine issue of material fact and (2) that they are entitled to judgment as a matter of law.  *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Here, Plaintiffs allege that these two requirements are satisfied through the application of issue preclusion.

Issue preclusion applies in nondischargeability proceedings to bar the relitigation of factual issues that were determined in a prior state court action.  *See, e.g.*, *Grogan v. Garner*, 498 U.S. 279, 284–86 (1991). To determine the issue-preclusive effect of a California state court's judgment, California preclusion law must be applied.  *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (full faith and credit statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered."). Under California law, the party asserting issue preclusion has the burden of establishing the following threshold requirements:

(1) the issue sought to be precluded must be identical to that decided in a former proceeding;
(2) the issue must have been actually litigated in the former proceeding;

(3) it must have been necessarily decided in the former proceeding;

(4) the decision in the former proceeding must be final and on the merits; and,

(5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). Finally, the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—should be considered to determine whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy. *People v. Ochoa*, 191 Cal.App.4th 664, 668 (2011).

> A.  <u>The issues that Plaintiffs seek to preclude are identical to the issues raised in state court.</u>

The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings. *See, e.g.*, *Lucido v. Superior Court*, 51 Cal 3d 335, 342 (Cal. 1990) ("The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.").

In this case, the Complaint alleges facts that are identical to those raised by Plaintiffs in state court. As part of the first claim for relief in the Complaint, a claim under § 523(a)(2)(A), Plaintiffs make the following allegations:

> 19. When Defendant retained Plaintiffs, she knowingly and purposefully failed to disclose her prior involvement in litigation with the Oso Homeowners Association and its board members and further knowingly and purposefully failed to disclose that her participation in that proceeding had resulted in a substantial monetary judgment against her. Defendant knew these omissions to be material.
>
> 20. Defendant represented to Plaintiffs that she desired their services to aggressively prosecute her claim for monetary damages for false arrest and

imprisonment. In reliance thereon, Plaintiffs immediately undertook prosecution of Defendant's claim in the underlying action spending considerable time and money in furtherance thereof.

21. In reality, and unbeknownst to Plaintiffs, Defendant sought Plaintiffs' prosecutorial services in the underlying action as a bargaining chip to dissuade the Oso Valley Homeowners Association and its board members from pursuing any further legal action against her, including collection efforts aimed at recovering some or all of the monetary judgment previously obtained against her.

22. Defendant purposefully and intentionally failed to include and involve Plaintiffs in her private negotiations with the Oso Valley Homeowners Association and its board members and attorneys, continually reassuring Plaintiffs that it was her intention to prosecute the underlying action to verdict.

23. Notwithstanding Defendant's continued representations which Plaintiffs accepted and believed to be true and upon which they relied in continuing their efforts to prosecute the underlying action, Defendant actually worked behind the scenes, without Plaintiffs' knowledge, to secure a release of her financial obligations to the Oso Valley Homeowners Association and its board members while at the same time working to deprive Plaintiffs of the fees and costs to which they were entitled in the underlying action.

24. As a direct and proximate result of Defendant's conduct, Plaintiffs have been directly damaged through the loss of attorney's fees and out-of-pocket costs in an amount according to proof, incurred both in the prosecution of the underlying action and the prosecution of this action.

Similarly, in the fourth cause of action (fraud) in state court, Plaintiffs asserted the following allegations:

37. When Defendant retained Plaintiffs, she knowingly and purposefully failed to disclose her prior involvement in litigation with the Oso Homeowners Association and its board members and further knowingly and purposefully failed to disclose that her participation in that proceeding had resulted in a substantial monetary judgment against her. Defendant knew these omissions to be material.

38. Defendant represented to Plaintiffs that she desired their services to aggressively prosecute her claim for monetary damages for false arrest and imprisonment. In reliance thereon, Plaintiffs immediately undertook prosecution of Defendant's claim in the underlying action spending considerable time and money in furtherance thereof.

39. In reality, and unbeknownst to Plaintiffs, Defendant sought Plaintiffs' prosecutorial services in the underlying action as a bargaining chip to dissuade the Oso Valley Homeowners Association and its board members from pursuing any further legal action against her, including collection efforts

aimed at recovering some or all of the monetary judgment previously obtained against her.

40. Defendant purposefully and intentionally failed to include and involve Plaintiffs in her private negotiations with the Oso Valley Homeowners Association and its board members and attorneys, continually reassuring Plaintiffs that it was her intention to prosecute the underlying action to verdict.

41. Notwithstanding Defendant's continued representations which Plaintiffs accepted and believed to be true and upon which they relied in continuing their efforts to prosecute the underlying action, Defendant actually worked behind the scenes, without Plaintiffs' knowledge, to secure a release of her financial obligations to the Oso Valley Homeowners Association and its board members while at the same time working to deprive Plaintiffs of the fees and costs to which they were entitled in the underlying action.

42. As a direct and proximate result of Defendant's conduct, Plaintiffs have been directly damaged through the loss of attorney's fees and out-of-pocket costs in an amount according to proof, incurred both in the prosecution of the underlying action and the prosecution of this action.

As shown above, Plaintiffs' state court complaint and this Complaint allege identical facts. As such, Plaintiffs have satisfied the first requirement for application of issue preclusion.

B.  <u>The issues that Plaintiffs seek to preclude from re-litigation were actually litigated in state court</u>

Under California law, an issue is "actually litigated" when it is properly raised by a party's pleadings or otherwise, when it is submitted to the court for determination, and when the court actually determines the issue. *See, e.g.*, *In re Harmon*, 250 F.3d, 1240, 1247 (9th Cir. 2001). California courts have also held that if an issue is determined to have been necessarily decided in a prior proceeding, it was actually litigated. *See id.* at 1248.

Here, because the Court finds that the elements for establishing relief under § 523(a)(2)(A) were necessarily decided in state court (see section III.2.C, *infra*), the Court finds that the elements for establishing relief under § 523(a)(2)(A) were actually litigated in the state court action.

C.  <u>The issues that Plaintiffs seek to preclude from re-litigation were necessarily decided in state court</u>

Under California law, an issue is necessarily decided when: (1) there are explicit findings of an issue made in a judgment or decision; or (2) or when the issue is a conclusion that must have been necessarily decided by the court. *See In re Dason*, 588 B.R. 537, 544 (Bankr. C.D. Cal. 2018). "Whether an issue was 'necessarily decided' has been interpreted to mean that the issue was not 'entirely unnecessary' to the judgment in the prior proceeding." *Lucido v. Superior Court*, 51 Cal.3d 335, 342 (Cal. 1990).

Here the fourth cause of action in the state court complaint was fraud. Subsequently, the state court found Defendant liable to Plaintiffs for $48,080.94 in "damages resulting from, the Fraud Mrs. Howell committed on them." Accordingly, the Court finds that the Judgment included an express finding of fraud against Defendant.

To establish fraud under California law, a plaintiff must establish the following elements: "(a) a misrepresentation of material fact (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 974 (1997). Here, because the Judgment included an express finding of fraud against Defendant, the state court necessarily found that each of the elements required to establish fraud under California law were satisfied.

"The elements of fraud under § 523(a)(2)(A) match the elements of common law fraud and of actual fraud under California law." *In re Jung Sup Lee*, 335 B.R. 130, 136 (B.A.P. 9th Cir. 2005). Accordingly, because the elements required to establish the nondischargeability of a claim

under § 523(a)(2)(A) are the same as those required to establish fraud under California law, the Judgment's express finding of fraud against Defendant necessarily decided all the requirements to establish relief under § 523(a)(2)(A). *See, e.g. Muegler v. Bening*, 413 F.3d 980, 983 (9th Cir. 2005).

The Court notes that Defendant asserts that the state court never found her liable for fraud. Specifically, Defendant argues that the state court only found her liable to Plaintiffs for breach of contract. Apparently, Defendant believes that when the state court made an interlineation on the Judgment, reducing the amount of damages awarded to Plaintiffs, the state court intended to award Plaintiffs damages solely on the breach of contract claim. Additionally, Defendant alleges that under applicable state law, a party may not separately recover under both contractual and tortious causes of action, because such a recovery would be duplicative. As such, Defendant asserts that because the state court awarded damages to Plaintiffs based on the breach of contract claim, it could not have simultaneously found Defendant liable for fraud. The Court disagrees.

Under the double recovery theory, it is true that a plaintiff may not recover compensatory damages under both tort and contract causes of action arising out of a single "item of damage." *Lazar v. Superior Court,* 12.Cal.4th 631, 638 (Cal. 1996); *Tavaglione v. Billings*, 4 Cal.4th 1150, 1159 (Cal. 1993). It is important to note, however, that this theory addresses the computation of a money judgment after the plaintiff successfully establishes that defendant was liable under multiple theories of recovery. *See id.* Accordingly, the double recovery theory does not prevent the determination of liability on several different causes of action. *See id.* Here, although the state court reduced the amount of damages awarded to Plaintiffs, the reduction in damages is unrelated to whether the state court found Defendant liable to Plaintiffs for fraud.

Based on the foregoing, the Court finds that this element for issue preclusion has been satisfied.

### D.   The Judgment is a final judgment on the merits

Bankruptcy courts must look to state law to determine the finality of state court judgments. *In re Russell,* 76 F.3d 242, 244 (9th Cir.1996); *In re Nourbakhsh,* 67 F.3d 798, 800 (9th Cir.1995); *see also* 28 U.S.C. § 1738 (federal courts must give "full faith and credit" to state court judgments).

California law is settled that, pending appeal, a trial court judgment is not a final judgment on the merits. *In re Turner*, 204 B.R. 988, 993 (9th Cir. BAP 1997); *Sandoval*, 140 Cal.App.3d at 936–37, 190 Cal.Rptr. at 32. *See also Kuykendall v. State Bd. of Equalization*, 22 Cal.App.4th 1194, 1207, 27 Cal.Rptr.2d 783, 789 (1994); Cal.Civ.Proc.Code § 10499. Accordingly, under California law, a state judgment is not final, and therefore collateral estoppel may not be applied, unless (1) an appeal of the state judgment has been exhausted; or (2) the time to appeal the state judgment has expired. *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 808 (9th Cir. 2007); *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*, 85 Cal.App.4th 1168, 1174 (2000); Cal.Civ.Proc.Code § 10499. Here, Defendant's appeals of the state court judgment and the bankruptcy court's orders related to annulment of the automatic stay were both unsuccessful. Therefore, Defendant having exhausted her appeals, the Judgment is a final judgment on the merits. Accordingly, the Court finds that the final element of collateral estoppel has been satisfied.

### E.   The party against whom preclusion is sought is the same as the party to the former proceeding.

Here, there is no dispute that the Defendant is the same defendant that was named in the state court Judgment. Accordingly, the Court finds that this element is satisfied.

F.  <u>The public policies underlying issue preclusion favor its application in this case.</u>

Finally, the Court notes that the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—heavily weigh in favor of its application to this proceeding. *See generally People v. Ochoa,* 191 Cal.App.4th 664, 668 (2011). Specifically, the Court notes that the approach to litigation adopted by Defendant has significantly undermined judicial economy, is fairly characterized as "vexatious," and appears to be merely an attempt to prevent or delay resolution of the proceeding. While the Court will not restate the procedural background section, as but one example of Defendant's history of attempting to delay the proceedings and filing frivolous pleadings, in the Prior Case, Defendant filed multiple objections to a notice of lodgment and requested that hearings be set several weeks out, ultimately delaying the entry of an order on Defendant's motion to reconsider for four and a half months. As another example, in the instant case, on November 28, 2016, Defendant filed a motion to reconsider the order denying her motion to reconsider an order which simply continued a hearing date from September 15 to December 14. In such a situation, Defendant's motion was *a priori* frivolous. As a result, noting the factors listed by the California Court of Appeals in *Ochoa*, the Court concludes that the application of the principles of collateral estoppel is indubitably appropriate in this situation.

3.  <u>Defendant's Opposition</u>

In Defendant's last opposition brief dated November 1, 2019, Defendant raises four arguments in opposition to the Second MSJ. One of these arguments, that Eisenberg lacks standing in this proceeding, has already been addressed above. To the extent the Court comprehends Defendant's remaining arguments, they are generally summarized as follows: (1) the alleged omission by

Defendant is a communication that had to be in writing pursuant to 11 U.S.C. § 523(a)(2)(B) because it pertains to a liability of the Defendant (in other words, Defendant argues that because the communication regards Defendant's financial condition, it cannot be the basis for a § 523(a)(2)(A) claim); (2) that the state court did not determine that Defendant had a duty to disclose; and (3) that the Judgment does not apportion damages between Plaintiffs' claims for breach of contract and for fraud. Additionally, while not raised in her briefing, Defendant orally raised the argument that Plaintiffs' motion was filed prematurely because the Judgment was not a final judgment at the time the Second MSJ was filed.

Defendant's first argument is based upon the plain language of 11 U.S.C. § 523(a)(2)(A) which excludes "a statement respecting the debtor's or an insider's financial condition." Defendant focuses on the following caselaw analysis:

> We also agree that a statement is "respecting" a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status. A single asset has a direct relation to an impact on aggregate financial condition, so a statement about a single asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent, able to repay a given debt or not. Naturally, then, a statement about a single asset can be a "statement respecting the debtor's financial condition."

*Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752, 1761 (2018). Defendant then reasons that her failure to disclose her previous litigation with the Oso Valley HOA constitutes the failure to disclose a liability, and, as such, is an omission regarding her financial condition.

The Court is not persuaded by Defendant's argument. It is correct that statements regarding financial condition must be brought under § 523(a)(2)(B), which was not done here, and are required to be in writing. The Court does not consider Defendant's omission here, however, to be an actionable "statement" for purposes of § 523(a)(2)(B). The Supreme Court has defined a

"statement" in the context of § 523(a)(2)(B) as "the act or process of stating, reciting, or presenting orally or on paper; something stated as a report or narrative; a single declaration or remark." *Id*. at 1759. So, while an omission of material information can be sufficient under certain circumstances to serve as the basis for a fraud claim under § 523(a)(2)(A) (as the Court finds is the case here), a "statement" or other actionable communication under § 523(a)(2)(B) would appear to require, at a minimum, some affirmative indication of denial in response to an inquiry by a plaintiff. Here, for example, the omission did not arise in a situation where Plaintiffs asked Defendant if she was separately negotiating with the HOA or had any judgments against her, with Plaintiffs interpreting Defendant's silence in the negative. Therefore, while an affirmative statement by Defendant that there were no outstanding judgments against her may arguably be considered a statement respecting her financial condition, the failure to disclose an existing judgment, absent more, does not constitute a "statement." As such, Defendant's first argument fails.

In addition, the Court also points out that the materiality of the previous litigation with the Oso Valley HOA is not premised upon the financial impact that litigation had on Defendant, but upon the purpose and objective of Plaintiffs' representation of Defendant. Put another way, as stated in ¶¶ 38 and 39 of the state court complaint:

> 38. Defendant represented to Plaintiffs that she desired their services to aggressively prosecute her claim for monetary damages for false arrest and imprisonment. In reliance thereon, Plaintiffs immediately undertook prosecution of Defendant's claim in the underlying action spending considerably [sic] time and money in furtherance thereof.

> 39. In reality, and unbeknownst to Plaintiffs, Defendant sought Plaintiffs' prosecutorial services in the underlying action as a bargaining chip to dissuade the Oso Valley Homeowners Association and its board members from pursuing any further legal action against her, including [] collection efforts aimed at recovering some part or all of the monetary judgment previously obtained against Defendant.

[Dkt. No. 66, pg. 11]. As a result, the materiality of Defendant's omission was not because of that omission's relevance to Defendant's financial condition, but because of the omission's bearing on the purpose of the retaining Plaintiffs.

Defendant's second argument is somewhat unclear. Defendant argues that "[a]s is clear, the finding of the duty to disclose is one of the required elements of the common law of fraudulent concealment pursuant to both California law and 11 U.S.C. § 523(a)(2)[A]." [Dkt. No. 198, pg. 2] (stylistic and grammatical changes made). Despite acknowledging that the element of a duty to disclose is a necessary part of a finding of fraud arising from an omission, Defendant then asserts that this element was not actually decided in state court. Defendant's argument, however, is self-defeating. As was noted in section III.2.C, *supra*, "[t]he elements of fraud under § 523(a)(2)(A) match the elements of common law fraud and of actual fraud under California law." *In re Jung Sup Lee*, 335 B.R. 130, 136 (B.A.P. 9th Cir. 2005). Accordingly, because the elements required to establish the nondischargeability of a claim under § 523(a)(2)(A) are the same as those required to establish fraud under California law, the Judgment's express finding of fraud against Defendant necessarily decided all the requirements to establish relief under § 523(a)(2)(A). *See, e.g. Muegler v. Bening*, 413 F.3d 980, 983 (9th Cir. 2005).

Defendant's third argument, that the Judgment does not apportion damages between the breach of contract cause of action and the fraud cause of action, appears to rely upon a misunderstanding of the jury verdict. In response to question 12 on the special jury verdict, the state court jury originally awarded Plaintiffs $144,243.71 in punitive damages. On October 15, 2008, the state court struck the award of punitive damages. There is nothing in the record, however, to indicate that the state court otherwise modified the special jury verdict. As a result, the judgment ultimately entered by the state court clearly states, in response to question 10, that Plaintiffs were awarded $48,080.94 in damages on the fraud cause of action.

Therefore, the Court GRANTS Plaintiffs' motion for summary judgment. Judgment will be issued separately.

###

Date: June 29, 2020

Mark Houle
United States Bankruptcy Judge